Bruce T. Moats (Wyo. Bar no. 6-3077)
LAW OFFICE OF BRUCE T. MOATS, P.C.
2515 Pioneer Avenue
Cheyenne, WY 82001
(307) 778-8844
Fax: (307) 635-2434
bmoats@hackerlaw.net

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2015 APR 3 AM 9 01

STEPHAN HARRIS, CLERK
CHEYENNE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| KAISER P. CUNNINGHAM, II, | ) |
| Plaintiff, | ) **15CV 48-F** |
| vs. | ) Civil Action No. _____ |
| WYOMING HEALTH FAIRS, INC., a domestic corporation, VICKI PIRAYESH, an individual, TEL BIRDSLEY, an individual, and SETH PERRITON, an individual, | ) |
| Defendants. | ) |

## COMPLAINT

### JURISDICTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981.

2. Subject matter jurisdiction over this action is invoked pursuant to § 706(f) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5; and pursuant to 28 U.S.C. § 1331, as a federal question occurring under 42 U.S.C. § 1981.

3. Venue in the State of Wyoming is proper because the unlawful employment practices alleged herein were committed within the State of Wyoming.

4. All conditions precedent to jurisdiction under 42 U.S.C. § 2000e-5 have occurred or been complied with: Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission within 300 days of the commission of the unfair employment practice. A right to sue letter was issued on March 5, 2015. This Complaint is timely filed.

## PARTIES

5. Plaintiff, Kaiser P. Cunningham, II, is a citizen of the State of Wyoming, residing in Cheyenne. He is African-American.

6. Defendant Wyoming Health Fairs, Inc., is a non-profit corporation created and registered under the laws of the State of Wyoming.

7. Defendant Vicki Pirayesh was the executive director of Wyoming Health Fairs, Inc., at all times relevant to this Complaint.

8. Defendant Tel Birdsley was an employee of Wyoming Health Fairs and a supervisor of Plaintiff at all times relevant to this Complaint.

9. Defendant Seth Perriton was an employee of Wyoming Health Fairs and a co-worker of Plaintiff at all times relevant to this Complaint.

10. Defendant Wyoming Health Fairs is an employer within the meaning of 42 U.S.C. § 2000e(b) and had at least fifteen employees at all times relevant to this Complaint.

## FACTS RELEVANT TO ALL CLAIMS

11. Kaiser P. Cunningham, II, began working for Wyoming Health Fairs as a part-time phlebotomist on or about August 31, 2011, working out of the Cheyenne office. After receiving positive job performance reviews, he was hired as a full-time Health Fair Coordinator, effective February of 2012.

12. As part of his job, Cunningham would travel with a team to different locations in Wyoming to conduct health fairs. Occasionally, he would travel out of state.

13. Soon after his hiring, Cunningham was the subject of numerous racist comments while at work at the office or on work trips. These comments included the repeated use of the term "nigger" whether in conversation or singing along with rap music played by co-workers. There were repeated reference to that "damn Obama," followed by looks toward Cunningham as if he was required to explain the actions of one of "his people." He was repeatedly subjected to comments about the food he obviously likes because he is black.

14. On a trip to Big Horn, Wyoming, he and other Wyoming Health Fair employees were at a restaurant when a co-worker remarked: "Hey, Kaiser, they got fried chicken and macaroni and cheese." While the waitress looked at Kaiser in disbelief, the others all laughed. Remarks were made that Cunningham must really like living near a Kentucky Fried Chicken, as he could eat there every day. "I bet you're getting pretty tired of that chicken."

15. On another occasion, one Caucasian employee who was seeing a woman who was black, remarked that he had told her that she needed to smile in a darkened room because he could not see her.

16. On another occasion when food was brought into the office, the chicken was placed near the name of a female employee, who was black. The comment was made: "I see Kim, you got the chicken, so Kaiser you got the watermelon." Other comments included that it was not a picnic for Kaiser and black female employee without grape soda, chicken and watermelon. Tel Birdsley, the Cheyenne office manager, would hear racial comments by subordinates but did not intervene.

17. On one trip to Ten Sleep, Wyoming, where Birdsley, who is Caucasian, grew up,

Birdsley warned him not to be offended if people stared at him and if the "n" word was used. When they stopped at a pharmacy in Ten Sleep, Birdsley announced that Cunningham was the only black man in town and that he, Birdsley, had brought him. Cunningham was embarrassed and humiliated. He felt all eyes upon him. He wished he could just disappear.

18.     Cunningham tried his best to ignore the comments because the job meant the world to him and he did not want to do anything that might cause him trouble at work.

19.     Seth Perriton, who is white, admitted to making remarks to Cunningham and another black employee about liking chicken, watermelon and grape Kool-Aid, but attempted to excuse the remarks as only jokes.

20.     The harassment ultimately culminated in an incident on a trip to Jackson, Wyoming, on or about September 14, 2012, a Friday. Cunningham and the other employees were invited to dinner by Chris Tacke of the Grand Teton Lodge Company, and his wife. Cunningham often avoided such dinners while working on the road because the racist comments that would be made.

21.     As Cunningham perused the menu, he commented he might like the cobb salad. Seth Perriton, who is white, remarked that, of course, Cunningham ought to like the salad because it had chicken. And then added words to the effect: "I think they have fried chicken too."

22.     Just the day before at lunch, Birdsley, the Cheyenne office manager, commented to Cunningham in words to the effect: "Hey man, they have fried chicken. You ought to like that."

23.     After Perriton made these remarks in front of Mr. and Mrs. Tacke, Cunningham was humiliated and embarrassed. He got up and left the restaurant. He stayed out in the parking lot for about 20 minutes as he had no desire to return to the scene of his humiliation. Perriton finally came out of the restaurant, walking fast-paced directly toward Cunningham while huffing and puffing.

Page 4 of 11

24. Cunningham was unsure of Perriton's intention. A conversation ensued with Cunningham breaking down and crying on Perriton's shoulder.

25. Cunningham began by asking Perriton how long he was supposed to endure comments about his race while at work. He said if it happened again, he would have no choice but to report it to management. Perriton admitted that Cunningham was right and that he would go talk to the others about not making such comments in the future. The two talked for a few minutes before Perriton drove Cunningham back to their hotel.

26. While Cunningham was back in his room speaking with a friend, he got two calls to his cell phone from Perriton at about 7:04 and 7:30 p.m. Perriton also texted him saying, "Hey." Later that night, Perriton brought Cunningham's glasses that he had left in the company pickup to Cunningham in his room.

27. Cunningham did not sleep that night after the incident at the Jackson restaurant. The next day, Birdsley informed Cunningham that Perriton, apparently deciding that the best defense to his bigotry was a good offense, had called Pirayesh, who is white, the night before and complained that Cunningham had threatened him in the parking lot. Birdsley told Cunningham he did not know exactly what Perriton had told Pirayesh had happened in the parking lot.

28. Perriton repeated Cunningham's remarks about being racially harassed to Pirayesh and Birdsley that night.

29. Birdsley informed Cunningham that morning that Pirayesh wanted to talk to both Cunningham and Perriton at the company headquarters in Casper that day, a Saturday. They packed up and headed to Casper.

30. When the crew arrived around 6 p.m. that night, Pirayesh told them to put Birdsley's

and Cunningham's belongings in her vehicle. Once all of the equipment was unloaded and the others, including Perriton, got on their way, Pirayesh called Cunningham and Birdsley into her office. She had a check and envelope on her desk.

31. Pirayesh informed Cunningham that "we" had decided to terminate Cunningham's employment because he had reportedly threatened Perriton and his family with some kind of unknown harm. She had a check and release prepared prior to the meeting, which took place on a Saturday when the office was closed.

32. Cunningham insisted he had not threatened Perriton other than his statements about no longer putting up with the racial harassment. Perriton is about six inches taller than Cunningham and outweighs him by several pounds. Perriton also has made it well known that he carries a gun on these out-of-town trips. Cunningham asked Perriton that evening if he had his gun with him.

33. Cunningham told Pirayesh about the harassment he had endured, what happened that night including his statement that he would expose it to management if it continued, as well as the calls from Perriton and his visit to Cunningham's hotel room with the glasses – pointing out they were not the actions of a man who feels threatened. Despite again hearing about the harassment, Pirayesh persisted in the decision to terminate Cummingham.

34. Cunningham asked how he was to get home to Cheyenne. Pirayesh insisted that Cunningham sign a paper she had with her and then she would take him whereever he wanted. They could even get a meal first.

35. Cunningham said he would get someone to pick him up and wanted to get his belongings out of Pirayesh's vehicle. She responded that he couldn't do so because it was locked. Cunningham called his father about coming to pick him up, but decided against it because he did not

want to wait with Pirayesh and Birdsley for two and one-half hours for his father to arrive.

36.     Cunningham arranged for a friend to pick him up in Wheatland as that way he would only have to stay with Pirayesh and Birdsley for about another hour. When Cunningham's mother called him back, Pirayesh yelled, "Who are you talking to?"

37.     Pirayesh continued to insist that Cunningham sign the paper, take the check and she would take him whereever he wanted. Finally, after about an hour in Pirayesh's office, an highly emotional Cunningham grabbed the paper and signed. The three then got into Pirayesh's vehicle and headed to Wheatland. Cunningham did not read the paper until he returned home. He immediately sought legal advice after reading it.

38.     Cunningham did not cash the check and returned it to Wyoming Health Fairs.

### FIRST CLAIM FOR RELIEF
### (Title VII - Race Discrimination)

39.     Plaintiff hereby incorporates by this reference all of the allegations contained in the paragraphs above.

40.     Because he is black, Plaintiff was subjected to racial harassment/hostile environment by white co-workers and his supervisor with Defendant Wyoming Health Fairs. Defendant Wyoming Health Fairs failed to investigate the harassment or attempt to obtain Plaintiff's side of the story after the executive director was informed of the harassment, first by Perriton and then by Plaintiff. Defendant Wyoming Health Fairs failed to take prompt and immediate action to stop the harassment, and, instead, terminated Plaintiff a day after its executive director learned that he had complained of the harassment and insisted he would expose it if it continued.

41.     The termination of his employment with Wyoming Health Fairs was motivated by

his race and color. The decision to terminate his employment came after communications between the director of Defendant and Cunningham's supervisor and a co-worker, all who were white. Defendant, through its director and agent, Pirayesh, blindly accepted the accusations of Perriton without seeking to learn Plaintiff's side of the story and declining to investigate the racial harassment/hostile environment after Perriton first, and then Plaintiff, informed her of the harassment and his statement that he would expose Perriton's and Birdsley's participation in the harassment if it continued.

42. Defendant, through its agent, Tel Birdsley, the Cheyenne office manager and Plaintiff's supervisor, failed to take remedial action when he participated in and acquiesced to racial harassment of the Plaintiff.

43. Defendant Wyoming Health Fairs discriminated against Plaintiff in the terms and conditions of his employment on the basis of his color and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981.

44. As a result of Defendant's discrimination, Plaintiff has suffered damages, all in amounts to be proven at trial. Plaintiff has suffered and continues to suffer, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

### SECOND CLAIM FOR RELIEF
### (Title VII - Retaliation)

45. Plaintiff hereby incorporates by this reference all of the allegations contained in the paragraphs above.

46. Perriton and Birdsley used false accusations of threats by Plaintiff to get Plaintiff terminated because he had insisted he would expose their racial harassment of Plaintiff if it

continued.

47. Pirayesh terminated Plaintiff a day after being informed by Perriton of racial harassment of Plaintiff and his promise to expose it if it continued, without attempting to learn Plaintiff's side of the story about the events at the restaurant the previous evening. Pirayesh persisted in her decision to terminate despite being informed again of the harassment by Plaintiff. She blindly accepted the accusations of Plaintiff's white co-worker without investigating the harassment and shared a motive with Perriton and Birdsley to keep the harassment from becoming known. Pirayesh participated in and/or acquiesced to Perriton's and Birdley's effort to silence Plaintiff's complaints of harassment by terminating him.

48. Defendant Wyoming Health Fairs is liable for acts of its agents in retaliating against Plaintiff by terminating him after he asserted that he was being racially harassed and insisting that he would expose the racial harassment if it continued, and by persisting in Cunningham's termination despite failing to investigate the harassment or hearing his side of the story.

49. Defendant Wyoming Health Fairs was motivated by retaliation against Plaintiff in terminating him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

50. As a result of Defendant's discrimination, Plaintiff has suffered damages, all in amounts to be proven at trial. Plaintiff has suffered and continues to suffer, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

### THIRD CLAIM FOR RELIEF
### (42 U.S.C. § 1981 - Race Discrimination/Retaliation)

51. Plaintiff hereby incorporates by this reference all of the allegations contained in the paragraphs above.

52. Defendants Wyoming Health Fairs, Vicki Pirayesh, Tel Birdsley and Seth Perriton participated in or acquiesced in the events leading up to and including the termination of Plaintiff's employment.

53. Perriton first racially harassed Plaintiff and then falsely accused Plaintiff of threats of harm with the design and intent to avoid accountability for his racial harassment of Plaintiff and to get Plaintiff terminated from employment because he insisted he would expose Perriton's harassment to management.

54. Birdsley, individually and as an agent of Wyoming Health Fairs, racially harassed Plaintiff and backed Perriton's false accusations, without bothering to obtain Plaintiff's side of the story, in order to avoid accountability for his racial harassment of Plaintiff and get Plaintiff terminated from employment because he had insisted that he would expose Birdsley's harassment and his acquiescence to harassment by subordinates under his charge if it happened one more time.

55. Pirayesh, individually and as an agent of Wyoming Health Fairs, accepted Perriton's false allegations, without investigating the harassment and/or bothering to obtain Plaintiff's side of the story, and was motivated by discrimination and retaliation in using the accusations to terminate Plaintiff's employment. Pirayesh persisted in her decision to terminate Plaintiff in spite of, or because of, being informed of the racial harassment by both Perriton and Plaintiff.

56. Wyoming Health Fairs is liable for the discriminatory and retaliatory conduct of its agents Pirayesh and Birdsley.

57. Defendants' acts and omissions complained of herein were in violation of his rights to be free of discrimination and retaliation in the work place pursuant to 42 U.S.C. § 1981.

58. As a direct and proximate result of Defendants' discrimination against Plaintiff, he

has suffered damages, all in amounts to be proven at trial. Plaintiff has suffered, and continues to suffer, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. Mr. Cunningham claims compensatory damages for these losses and injuries

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against Defendant as follows:

1. Enter judgment that the practices complained of herein are unlawful and violative of Title VII of the Civil Rights Act of 1964;

2. Enter judgment that the practices complained of herein are unlawful and violative of 42 U.S.C. § 1981;

3. Compensate and make whole Plaintiff for all earnings, wages, and other benefits he would have received but for the discriminatory practices of Defendants;

4. Compensate and make whole Plaintiff for compensatory damages, including but not limited to emotional distress, personal humiliation, and loss of enjoyment of life;

5. Award the Plaintiff punitive damages;

6. Award Plaintiff reasonable attorney's fees, and the costs of this litigation;

7. Award Plaintiff other relief which the Court finds just and proper.

DATED this 3rd day of April, 2015.

KAISER P. CUNNINGHAM, II, Plaintiff

By: *[signature]*
Bruce T. Moats (Wyo. Bar No. 6-3077)
Attorney for Plaintiff Cunningham